UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PENN-AMERICA INSURANCE
COMPANY,

          Plaintiff,

v.                                      Case No. 8:08-cv-02538-EAK-AEP

LUCKY ENTERTAINMENT, LLC and
ICE CREAM 4 YOU INTERNATIONAL, LLC,

          Defendants.
_____

## **ORDER**

       This cause is before the Court on Defendant, Lucky Entertainment, LLC's, (Lucky) Motion for Attorney Fees and Costs (Doc. 51); Plaintiff, Penn-America Insurance Company's (Penn-American) Memorandum of Law in Opposition to Plaintiff's Motion for Attorney Fees and Costs (Doc. 54); Defendant, Lucky's, Motion for Hearing on Amount of Fees and Costs (Doc. 55); Defendant, Lucky's, Supplemental Motion for Attorney Fees and Costs (Doc. 61), Plaintiff, Penn-America's, Supplemental Memorandum of Law in Opposition to Defendant's Affidavit, Supplement to Motion for Attorney Fees and Costs (Doc. 64); and Plaintiff, Penn-America's, Amended Supplemental Memorandum of Law in Opposition to Defendant's Affidavit, Supplement to Motion for Attorney Fees and Costs (Doc. 66). Based on the following discussion, the Court grants the motion and awards the Defendant $91,906.00 in attorney's fees and costs.

**I. Relevant Procedural Background**

1. This Court's Order dated July 30, 2010 (Doc. 49), incorporated herein by reference determined that the settlement between Penn-America Insurance Company (Penn-America) and Lucky Entertainment, LLC, (Lucky) operates as a confession of judgment and that Lucky was entitled to recover attorneys fees pursuant to §627.428, Florida Statutes. (Doc. 50).

2. On August 24, 2010, Lucky filed its Motion to Tax Attorney's Fees and Costs (Doc. 51).

3. On September 21, 2010, Lucky filed its Motion for Hearing on Amount of Attorney Fees and Costs (Doc. 55) and submitted the Affidavit of Mark P. Buell regarding same (Doc. 56) which was later corrected (Doc. 57).

4. On October 5, 2010, Penn-America filed a Memorandum of Law in Opposition to the Motion for Hearing on Amount of Attorney Fees and Costs and accompanying Affidavits (Doc. 58).

5. On October 27, 2010, this Court granted in part the Lucky's Motion for Hearing on Amount of Attorney Fees and Costs, stating that a hearing would not be held but that Lucky and Penn-America would have an opportunity to supplement their positions (Doc. 59).

6. On November 12, 2010, Lucky filed the Affidavit of George A. Vaka in support of its Motion to Tax Attorney Fees and Costs (Doc. 60), supplemented its Motion to Tax Attorney Fees and Costs (Doc. 61), and filed a Proposed Bill of Costs (Doc. 62).

7. On November 26, 2010, Penn-America filed a Memorandum of Law in Opposition to Defendant's Affidavit, Supplement to Motion to Tax Attorney Fees and Costs, and Proposed Bill of Costs (Doc. 64).

8. On December 1, 2010, Penn-America filed an Amended Supplemental Memorandum of Law in Opposition to Defendant's Affidavit, Supplement to Motion to Tax Attorney Fees and Costs, and Proposed Bill of Costs (Doc. 66).

## II. Defendant's Motion to Tax Attorney Fees and Costs

Lucky argues that Penn-America should be assessed approximately $209,847.00 in attorney fees and $1,013.29 in costs. It reaches this number by using a lodestar calculated by multiplying its average "reasonable hourly wage" by 187.1 hours totaling $75,940.00 (plus other fees for a total of $77,940.00), which it then multiplied by a contingency risk multiplier of 2.0 for a total of $170,540.00 and 2.5 for a total of $209,510.00. (Doc. 56).[1] The details of this billing are set forth in Exhibits 1 and 2 of the Affidavit of Mark P. Buell (Docs. 56-1 and -2). Lucky supplemented its motion with an affidavit from attorney George A. Vaka which supported attorney Buell's claim that $450.00 hourly is a reasonable rate.

Mark Buell, the affiant and Lucky's attorney, attested that the contingency risk multiplier should be between 2.0 and 2.5 because, "there were complicated issues of law and fact which made it highly uncertain whether Lucky would prevail in the coverage litigation against Penn America [sic]. Indeed, Penn America filed this action against Lucky evidencing Penn America's analysis of and confidence in its position" (Doc. 56). Thus, by using the formula as set out in *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985), multiplying the reasonable rate by the number of hours to calculate a lodestar which is then multiplied by a contingency factor, as stated in and modified by *Standard Guaranty Insurance Co. v. Quanstrom*, 555 So. 2d 828, 834 (Fla. 1990), the total fees assessed should equal $209,847.00 in fees and $1,013.29 in costs (Doc. 56).

## III. Plaintiff's Response

Plaintiff agrees with the formula Defendant uses in support of its argument, as it also relies on *Quanstrom* and *Rowe* (Doc. 66). However, Plaintiff calculates the attorney fees differently, both arguing that the number of hours charged is too great and that the fee charged is unreasonably high. *Id.* Plaintiff argues that only 185.4 hours should be charged, and that the rates

---

[1]This includes a fee of $14,660, the amount of fees paid by Lucky to its attorney prior to switching to a contingency arrangement. (Doc. 56).

should be capped at $360.00 hourly, with associates and staff billing even less. *Id.* Penn-America argues that Lucky's attorney billed for redundant hours and for fees charged for litigating the amount of fees which are not compensable. *Id.* Further, Penn-America argues that the hourly rate exceeded what is reasonable. *Id.* Finally, Penn-America argues that no contingency multiplier should be used because there was no valid contingency agreement and that to compensate for a contingency without an agreement would be contrary to public policy. *Id.* Penn-America contends that it should only be billed $60,572.00 total. *Id.*

## IV. Discussion

Both parties have accurately represented the law of Florida governing attorney fee calculations under *Rowe*, 472 So. 2d at 1150, and *Quanstrom*, 555 So. 2d at 834. (Docs. 56 and 66). However the two parties assert wildly different figures for the fees that should be charged. As there are three numbers used in the calculation of attorney fees in such cases, the Court will evaluate each in turn.

A. Jurisdiction and Choice of Law

As this case is before the Court in diversity jurisdiction, the law of the state in which the state Court sits will govern for substantive matters whereas federal law will govern for procedural matters. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). While attorney fees, as they arise out of the course of this, federal, litigation may seem to be procedural law, the United States Supreme Court has determined that where the statute for attorney fees arises in state law and is part of a larger policy objective, state law will govern. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991). Moreover, the Eleventh Circuit has expressly held that the statute under discussion in this case, Fla. Stat. §627.428, reflects a substantive policy of the state and will therefore govern in diversity cases in Florida's federal courts. *All Underwriters v. Weisberg*, 222 F.3d 1309, 1310-1312 (11th Cir. 2000).

B. Reasonable Fee

The defendant's counsel, Mark Buell of Buell & Elligett, P.A. charged to its client Lucky,  $450.00 hourly and supported this fee with an affidavit by himself and another area attorney George A. Vaca. (Doc. 61, Exhibits A & C). Penn-America argues that the affidavits are insufficient support, first by asserting that Buell's affidavit lacks evidentiary value and then asserting that Mr. Vaca's affidavit, as it is his personal opinion, is not satisfactory evidence (Doc. 66). Penn-America relies on *Norman v. Housing Authority of Montgomery* for this proposition (Doc. 66; 836 F.2d 1292, 1299-1301 (11th Cir. 1988)). However, *Norman* specifically states, and Penn-America argues, that more than the affidavit of the attorney performing the work is required. (Doc. 66; 836 F.2d at 1299). The affidavit of Mr. Vaca is certainly sufficient in this regard, as he is not the attorney that performed the work.

Penn-America then argues that Mr. Vaca's affidavit is his own personal opinion. (Doc. 66).  However, Mr. Vaca's affidavit leads the Court to conclude that, if nothing else, he is an "expert" for the purpose of enabling the Court to determine whether Attorney Buell's fee is reasonable. (Doc. 61, Exhibit C.; *see Norman*, 836 F.2d at 1299). Moreover, Penn-America does not show that Mr. Vaca is unqualified to make such a determination, other than alleging that this will also enable him to obtain a high hourly rate. (Doc. 66). This argument lacks merit: if an attorney cannot aver that another attorney's fee is reasonable, then no one can. Of course, a poll of all attorneys' fees charged in the local market would be welcome by the Court, but this is not a requirement, especially when the initial evidence brought to the Court's attention is uncontroverted. The *Norman* court held that the District Court must "winnow[] down the comparables offered by the parties"; however, here, only one rate was given and it was uncontroverted. 836 F.2d at 1300 . The "party who seeks the fees carries the burden of establishing the prevailing 'market rate.'" and here Lucky has satisfactorily carried that burden. *Rowe*, 472 So. 2d at 1151. The Court finds that the $450.00 fee charged by Attorney Buell is reasonable, and that the other fees charged by associates and staff are also reasonable. Therefore, the average billable rate of $416.00 will be used. The separately itemized costs and expenses in the amount of $548.11 are also compensable (Doc. 61).

C. Hours billed

The vast majority of the time that Attorney Buell billed is not in dispute. Importantly, this is the factor that compensates the attorney for time and labor required and the complexity and novelty of the issue upon which he is working. *Rowe*, 472 So. 2d at 1150. Penn-America is correct in asserting that courts may not award attorney fees for litigating the *amount* of fees (Doc. 66; *Palma*, 629 So. 2d at 833). Penn-America is also correct in asserting that this Court Ordered Penn-America to pay Lucky's reasonable attorneys fees on July 30, 2010, receipt of which is corroborated even by Attorney Buell's own timestamp (Docs. 66, 61, Exhibit B). Therefore any fees charged after receipt of the Order which are directly related to the litigation of the fee amount must be disqualified. However, some fees may be charged that are pertinent to matters occurring before or on the Order date. Lucky was billed for 4.1 hours[2] for work done after the order of the judgment according to the fee invoice (Doc. 61, Exhibit C). This allows for billing on the question of the Order of Judgment, which was not directly pertinent to litigating the amount of fees and which should therefore be allowed. Penn-America contends that Lucky was also charged for excessive, redundant or unnecessary fees (Doc. 66). The Court will not second guess the practices of the attorneys, excepting those fees that are barred by law to be billed, such as those for litigation fee amounts, or for otherwise egregious activity, which the record does not reflect. The total billable hours is therefore found to be 183 hours.

---

[2] All of the disallowed fees were billed at $400.00 per hour, except for .8 hours which were billed at $450.00 per hour. The Court recognizes that this disallowance varies the average hourly rate of $416.57, but because the number of hours disallowed is small, this variance is negligible. The Court finds that the adjustment in the hours will adequately compensate Penn-America without unduly burdening the Court with recalculating the average total hourly rate.

D. Services Rendered Prior to November 30, 2009

The services rendered prior to November 30, 2009, were not part of any valid contingency agreement, should the Court determine one exists. A 20% discount was given to Lucky by Buell & Elligett, P.A. (Doc. 61-1, p. 10). For services rendered until November 30, 2009, the amount billed to and paid by Lucky was $14,660.00. *Id.* To charge Penn-America more would be an unjust enrichment for Lucky. It is not contended that any fee multiplier applies to these services. Therefore, the $14,660.00 will be charged to Penn-America. The separately billed fees and costs predating November 30, 2009, in the amount of $569.89 are also compensable (Doc. 56-1).

E. Contingency Fee

For two reasons, Lucky's argument for a contingent fee multiplier must be rejected. First, the fee agreement regarding the contingency was only effective for seven (7) days prior to this Court's order regarding liability (Doc. 49). The Court could establish a multiplier for only these seven (7) day period, although this would be to no avail as no time was billed to Lucky during this period (Doc. 61-1, p. 20). Courts applying Florida law governing fee shifting in contingency cases are bound by the requirement that contingency fee agreements must be in writing in order to be effective, otherwise they are unconscionable and of no effect. *Foodtown Inc. of Jacksonville v. Argonaut Ins. Co.*, 102 F.3d 483, 485 (11th Cir. 1996)(applying §627.429 under *Rowe*, 472 So. 2d at 1151); *see also FIGA v. R.V.M.P. Corp.*, 681 F. Supp. 806, 810 (S.D. Fla. 1988)(*rev'd on other grounds by* 874 F.2d 1528 (11th Cir. 1989)). Without a valid contingency fee agreement, no contingency risk multiplier can be used. *See Pompano Ledger v. Greater Pompano Beach Chamber of Commerce*, 802 So. 2d 438, 438-39 (Fla. 4th DCA 2001); *Wolfe v. Nazaire*, 758 So. 2d 730, 734 (Fla. 4th Dist. Ct. App. 2000)(J. Farmer, concurring specially). The contingency agreement here was executed on July 13, 2010, just seven (7) days prior to this Court's Order of liability, which tracked the settlement of by the parties (Doc. 49). At that point, it can hardly be said that the agreement was a true contingency agreement, as there was very

little contingency remaining at that point. *See Reliance Ins. Co. v. Harris*, 503 So. 2d 1321, 1323 (Fla. 1st DCA 1987). Therefore, the Court finds that the contingent fee agreement between Buell & Elligett, P.A. and Lucky is invalid for the purposes of fee shifting and that it cannot support a contingency risk multiplier. Accordingly, it is

**ORDERED** that: Plaintiff's motion (Doc. 51) is **granted** in that attorney fees and costs in the total amount of $91,906.00, that is $90,788.00 in fees and $1118.00 in costs, that are to be paid by Penn-America. The Clerk of Court is directed to enter a judgment in favor of Lucky Entertainment, LLC and against the plaintiff, Penn-America Insurance Company. Further, the Clerk shall close this case as all issues are now resolved.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 4th day of February, 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

cc: All parties and counsel of record.